UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **America First Legal Foundation** 611 Pennsylvania Avenue SE #231, Washington, DC 20003, <br><br> *Plaintiff,* <br><br> v. <br><br> **Xavier Becerra**, in his official capacity as United States Secretary of Health and Human Services 200 Independence Avenue, SW, Washington, DC 20201; <br><br> **United States Department of Health and Human Services**, an agency of the United States 200 Independence Avenue, SW, Washington, DC 20201; <br><br> **Colleen Shogan**, in her official capacity as Archivist of the United States 8601 Adelphi Road College Park, MD 20740, and <br><br> **National Archives and Records Administration**, an agency of the United States 8601 Adelphi Road College Park, MD 20740, <br><br> *Defendants.* | Case No. 1:24-cv-1092 <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> **COMPLAINT** (For Injunctive and Declaratory Relief) |

INTRODUCTION

1.    The Department of Health and Human Services (HHS), and specifically the Centers for Disease Control and Prevention (CDC), have a pattern and practice of removing the emails of employees who separate from employment within as little

as thirty days from the date of separation. Federal law requires that each agency "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101.

2.    Implementing this provision of the Federal Records Act, the National Archives and Records Administration (NARA) has promulgated regulations and a schedule that HHS (including the CDC) purports to follow. That schedule sets a minimum retention period of 3 years for emails of lower-level employees. *See* General Records Schedule 6.1, Transmittal No. 33, at 22 (Jan. 2023) (available at https://bit.ly/3FZHgvz) ("GRS 6.1"); *see* 44 U.S.C. § 2912; 36 C.F.R. §§ 1220.10, 1220.12, 1224.10, 1227.12.

3.    Yet when America First Legal (AFL) sent a FOIA request for certain CDC documents, the CDC informed AFL that it removes and destroys all lower-level employees' emails "30 days after they leave the agency." Exhibit A at 4.

4.    The CDC's apparent removal of former employees' emails within 30 days violates the Federal Records Act. The Plaintiff challenges the HHS Secretary's and Archivist's failures to fulfill their statutory duties to notify Congress and ask the Attorney General to initiate legal action regarding this violation. The Plaintiff also challenges the adequacy of the CDC's (and HHS's) recordkeeping.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction under 5 U.S.C. § 704 and 28 U.S.C. § 1331.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (e) because some Defendants reside in this district, and a substantial part of the acts and omissions giving rise to this action took place here.

## PARTIES

7.    Plaintiff America First Legal Foundation (AFL) is a nonprofit corporation that promotes government transparency and accountability by gathering official government information, analyzing it, and disseminating it to the public through reports, press releases, media platforms including social media, and by posting government records on its website for use by the public, scholars, and others. Among other things, America First Legal conducts oversight of the Department of Health and Human Services to educate the public about the Department, particularly when the Department fails to meet its statutory obligations and its mission.

8.    AFL frequently directs Freedom of Information Act (FOIA) requests to the Department, including a March 13, 2023, request to the CDC regarding its document "LGBTQ Inclusivity in Schools: A Self-Assessment Tool." That request gave rise to the CDC's disclosure that it is deleting former employees' emails in as little as 30 days. AFL cannot obtain the access to responsive documents it is entitled to because of the CDC's improper removal.

9.    Through its FOIA investigations, AFL has uncovered the CDC's communications with social media platforms to censor speech relating to COVID-19. *See,*

*e.g.*, *AFL Lawsuit Uncovers More Damning CDC Documents Revealing Twitter's "Partner Support Portal" for COVID-19 Related Censorship and the U.S. Government's Advancement of "Social Inoculation" Against the "Infodemic"* (Dec. 6, 2022), https://bit.ly/3vApNb7; *BREAKING: America First Legal Uncovers How the Biden Administration Coordinated to Use Foreign Intelligence Tactics Against Americans to Censor Speech* (Jan. 26, 2023), https://bit.ly/4at1Ool.

10.     AFL has also uncovered the influence of a radical "equity" agenda on the CDC's COVID-19 vaccine promotion policy. *AFL Releases More CDC Documents Revealing Bizarre "Equity" Agenda in COVID-19 Vaccination and Slides Discussing the Policy Objective of Injecting Children Even When "Parent Is Not Present"* (Dec. 15, 2022); https://bit.ly/4aqjaHb.

11.     As of the date of this Complaint, AFL has six other pending lawsuits seeking email records from HHS, the CDC, and other HHS components.[1]

12.     HHS and CDC's failure to use an adequate recordkeeping system imposes irreparable harm on AFL, which cannot obtain information necessary to further its mission absent adequate records. This harm will continue until and unless the agency implements an adequate recordkeeping system with proper email retention policies. Referral of this matter to Congress and the Attorney General is likely to lead

---

[1] *AFL v. CDC*, No. 22-978 (D.D.C. filed Apr. 8, 2022) (social media censorship); *AFL v. HHS*, No. 23-581 (D.D.C. filed Feb. 2, 2023) (Unaccompanied Alien Children); *AFL v. FDA*, No. 23-528 (D.D.C. filed Feb. 27, 2023) (puberty blockers); *AFL v. FDA*, No. 23-3680 (D.D.C. filed Dec. 11, 2023) (Hydroxychloroquine and Ivermectin); *AFL v. HHS*, No. 24-439 (D.D.C. filed Feb. 14, 2024) (Assistant Sec'y for Health Adm. Levine); *AFL v. CDC*, No. 24-675 (D.D.C. filed Mar. 8, 2024) ("chestfeeding" [sic]).

to the implementation of an adequate recordkeeping system and proper retention of relevant records.

13.     Defendant Xavier Becerra is the Secretary of Health and Human Services. The Plaintiff sues him in his official capacity.

14.     Defendant Department of Health and Human Services is the federal agency of the United States in which the CDC is housed.

15.     Defendant Colleen Shogan oversees the National Archives and Records Administration. The Plaintiff sues her in her official capacity as Archivist of the United States, the office with statutory responsibility to address unlawful destruction of federal records. *See, e.g.*, 44 U.S.C. §§ 3106, 2912.

16.     Defendant National Archives and Records Administration is the federal agency of the United States to which other agencies must report unlawful destruction of federal records. *See, e.g.*, 36 C.F.R. § 1230.14.

## LEGAL FRAMEWORK

17.     The Federal Records Act "governs the creation, management and disposal of federal records." *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991). Under the Act, the Archivist determines whether recorded information—"in physical, digital, or electronic form"—is a "record." 44 U.S.C. § 3301(b). "Due to the importance of maintaining federal records (which are generally accessible to the public through the Freedom of Information Act), the [A]ct strictly limits the circumstances under which records can be removed from federal custody or destroyed." *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 953 (D.C. Cir. 2016). "[R]ecords of the United States Government

may not be alienated or destroyed except" pursuant to the Act. 44 U.S.C. § 3314. The Archivist promulgates schedules by which records "of a specified form or character" can be disposed after "specified periods of time." *Id.* § 3303a(d). If records are improperly disposed, "valuable federal records could be lost forever." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999).

18.    The Act requires that the "head of each Federal agency shall make and preserve records containing adequate and proper documentation" of the agency's functions and decisions "to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101. Agency heads must also "establish safeguards against the removal or loss of records" that the agency head "determines to be necessary and required by regulations of the Archivist." *Id.* § 3105.

19.    Section 3106 governs the unlawful removal and destruction of records. Section 3106(a) imposes on HHS's Secretary a notification duty and an enforcement duty:

> The head of each Federal agency shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency.

20.    Section 3106(b) imposes a separate referral duty on the Archivist when the HHS Secretary fails to initiate an enforcement action:

In any case in which the head of a Federal agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action described in subsection (a), or is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.

21.    A plaintiff may "seek to compel the agency head or the Archivist to initiate an enforcement action under the Administrative Procedure Act, 5 U.S.C. § 706(1)." *Am. C.L. Union Found. of Fla. v. U.S. Immigrs. & Customs Enf't*, No. 1:22-CV-01129 (CJN), 2023 WL 6461053, at *2 (D.D.C. Aug. 31, 2023) (citing *Kerry*, 844 F.3d at 954).

## NARA'S CDC INVESTIGATION

22.    On February 24, 2020, the National Archives and Records Administration advised the agency records officer for the Department of Health and Human Services Agency for Healthcare Research and Quality of an allegation regarding the unauthorized disposition of records.

23.    Specifically, the allegation was that this Agency was improperly deleting the emails of non-Capstone officials sixty days after their employment had ended. *See* Letter from Laurence Brewer, Chief Recs. Officer for U.S. Gov't, NARA, to Patricia Bosco, Agency Recs. Officer, Agency for Healthcare Rsch. & Quality (Feb. 20, 2020) (available at https://bit.ly/3Zqi482).

24.    An investigation ensued, and on May 5, 2020, the National Archives wrote a closing letter reciting that the Agency's mailboxes were managed by the Department's Office of the Chief Information Officer and that the emails in question had

been removed by the Office of Technology Infrastructure and Operations embedded therein. The National Archives noted that as an interim measure, the Office of Technology Infrastructure and Operations provided the Agency with .pst files for all separated employees and that this process would continue "until a permanent and more comprehensive Departmental solution is put into place." The National Archives concluded that it would "investigate this matter further" with the Department. *See* Letter from Laurence Brewer, Chief Recs. Officer for U.S. Gov't, NARA, to Patricia Bosco, Agency Recs. Officer, Agency for Healthcare Rsch. & Quality (May 5, 2020) (available at https://bit.ly/3Zqi482).

25.    On March 13, 2023, AFL filed a FOIA request for certain CDC documents—as it does routinely. Specifically, AFL requested all records or communications between the CDC and certain interest groups relating to a CDC publication that encouraged teachers to adopt and promote mindsets such as "I cannot assume a student's gender, gender identity, or sexual orientation," and encouraged school nurses to "describe anatomy and physiology separate from gender" when "deliver[ing] sexual health information and services," CDC, LGBTQ INCLUSIVITY AND SCHOOLS: A SELF-ASSESSMENT TOOL (2022) (available at https://tinyurl.com/3ktepzyb).

26.    In that FOIA process, AFL conferred with CDC personnel to narrow the search to a limited set of custodians. The CDC Freedom of Information Act analyst communicated that only one of the three individuals who worked on the publication

in the CDC Division of Adolescent and School Health (DASH) remained, so any potentially responsive emails from the other two individuals would have been destroyed or removed. Exhibit A at 4.

27.     In particular, in responding to AFL's request for confirmation that the CDC had removed or destroyed employee emails, the CDC Freedom of Information Act analyst stated:

> That is correct. Unless they were a capstone director/manager etc., it is my understanding all other employees' emails are deleted 30 days after they leave the agency. Thanks.

*Id.*

28.     Because this evidence, taken with the National Archives' 2020 investigation and findings, suggested that the Biden Administration and HHS were willfully disregarding their Federal Records Act duties and obligations, AFL sent a complaint letter on March 29, 2023, to HHS's Office of Inspector General outlining this evidence and HHS's legal failures. Exhibit A.

29.     AFL emailed a courtesy copy to the NARA Records Management Oversight and Reporting Program. *See* Exhibit A at 3.

30.     On May 18, 2023, NARA's Oversight and Reporting Team confirmed to AFL that it opened an unauthorized disposition case (UD-2023-0043) requesting, pursuant to 36 C.F.R. § 1230.16, that the CDC investigate allegations concerning the premature deletion of emails of separated employees. Exhibit B at 2.

31.     On the same day, NARA confirmed that it would contact Mark Harper, CDC FOIA Analyst, and review the case. Exhibit B at 1.

32.     On April 7, 2023, NARA sent a letter to HHS and CDC stating that "[t]he Department of Human Health Services (HHS) adopted the Capstone approach in 2016 to manage agency emails/email accounts, and all HHS components must follow the recordkeeping requirements in General Records Schedule (GRS) 6.1, Email Managed Under A Capstone Approach." This statement means that before deleting any former employee's email account, the CDC did not submit an alternative records schedule to NARA to permit an approach different from what is provided in the GRS. Exhibit C.

33.     Thus, NARA requested that the CDC "investigate" the apparent unlawful removal of emails of former employees within 30 days "to determine whether email records of separated employees have been prematurely deleted, and are not being preserved and managed in accordance with GRS 6.1." The letter asked for "a comprehensive report within 30 days." *Id.*

34.     On February 23, 2024, NARA sent a follow-up letter to HHS and CDC stating that it had reviewed the CDC's reports in response to AFL's complaint. According to this letter:

> The CDC does not require the preservation of all emails but rather preserves all records from email accounts. CDC's records management policy instructs all agency personnel to maintain records outside of email accounts in a proper record-keeping system, shared drive, personal drive, or physical format. The CDC instructs individual email account holders to apply retention based on the email's content value and its applicability to a NARA-approved records schedule.

NARA thus considered the matter "closed." Exhibit D.

### THE GENERAL RECORDS SCHEDULE

35.     "Agencies using [GRS 6.1] must apply it to email records." Exhibit E at 1. That schedule "applies to all email, regardless of how the email messages are managed or what email technology is used," and "also includes any associated attachments." *Id*.

36.     GRS 6.1 distinguishes between Capstone and non-Capstone officials. "Capstone Officials are senior officials designated by account or position level." *Id*. at 3. For Capstone officials, GRS 6.1 provides a disposition instruction for emails of "permanent" retention. *Id*. For all "[e]mail[s] and/or other types of electronic messages of all other officials, staff, and contractors," GRS 6.1 sets a minimum retention period of 3 years for support and/or administrative positions and seven years for all other non-Capstone officials. *Id*. at 5. The seven-year term "applies to the majority of email and other messaging accounts/users within an agency." *Id*.

37.     HHS published an "HHS Policy for Records Management," which confirms that "HHS has adopted the Capstone approach (GRS 6.1)." § 6.2 (Feb. 2024) (available at https://perma.cc/D3KF-NU28). Though HHS's policy has headings for "Email and Other Electronic Messages of Capstone Officials" and "Email Records of Non-Capstone Officials," each followed by a hyphen, the policy text is missing:

11

6.2.3. Email and Other Electronic Messages Managed under the Capstone Approach

HHS has adopted the Capstone approach (GRS 6.1).  Under the Capstone approach, HHS manages the disposition of email records and attachments, calendar appointments, tasks, instant messages, text messages, and chat messages that serve a similar purpose as email to facilitate communication and information sharing based on the role of the account user rather than the content of each record.  (NOTE: Records under a preservation obligation, such as a litigation hold, must be managed based on record content, so are precluded from being managed under the Capstone approach.)

a. Email and Other Electronic Messages of Capstone Officials –
b. Email Records of Non-Capstone Officials –

38.    Another HHS component, the National Institutes of Health, explains its adoption of GRS 6.1 for non-Capstone officials as follows: "All work-related email messages sent or received by Non-Capstone Officials, that meet the definition of a Federal record, are eligible for destruction after being maintained for a minimum of seven years, in accordance with GRS 6.1, Item 011." NIH goes on to explain: "Email accounts for separated employees designated as Non-Capstone Officials must be maintained until the associated email records have met the disposition requirements identified in GRS 6.1, Item 011." Finally, "Any email, meeting the definition of a Federal record, that is deleted from the email system before having met the disposition requirements is considered an unauthorized destruction of a Federal record and must be reported to NARA." NIH, *1743-1—Email Records Management* (Mar. 15, 2019) (available at https://perma.cc/CQL6-3ZLA).

39.    The CDC's Records Management Policy states, "CDC shall use the mandatory NARA GRS." *PMG | Records Management – Description*, CDC (available at https://perma.cc/KQE5-F6H2) (last visited April 12, 2024) [attached as Exhibit F].

40.    The CDC, according to NARA's February 23, 2024, close-out letter, "does not require the preservation of all emails but rather preserves all records from email accounts." Exhibit D at1.

41.    That is a departure from the GRS, which requires preservation of all emails unless NARA approves an alternative. It would appear, then, that NARA approved such a policy after the CDC destroyed their former employees' email accounts (emails included). To be consistent with the GRS, the CDC needs to determine whether former employees' records are "non-records" or "copies" and whether they are subject to immediate disposal. But that was certainly not the CDC's position as of April 2023 when NARA sent its April 7, 2023, inquiry letter. *See* Exhibit C at 1.

42.    The GRS referring to "email systems" is GRS 5.1, which only allows immediate destruction "after copying to a recordkeeping system or otherwise preserving." General Records Schedule 5.1, Transmittal No. 28 (July 2017) (available at https://bit.ly/444rI4w).

43.    While content may not be king in the Capstone approach, nothing authorizes the destruction of records between thirty days and three years after an employee leaves federal employment. *See* NARA, WHITE PAPER ON THE CAPSTONE APPROACH AND CAPSTONE GRS at 7 (April 2015) (available at https://bit.ly/3Jm5Nfm) ("email within accounts designated as temporary are eligible for eventual destruction").

44.    Despite these apparent policies, the CDC is destroying or removing emails of non-Capstone former employees within 30 days pursuant to some unknown,

unpublished policy in violation of GRS 6.1. This unstated policy is unlawful, is inadequate to ensure access to federal records, and renders the CDC's actual policy arbitrary, capricious, and not in accord with the law.

45.    That removal deprived AFL of access to federal records responsive to its FOIA request.

46.    CDC's inadequate policy will continue to deprive AFL of access to responsive federal records to its current and future FOIA requests, given that AFL routinely files FOIA requests against CDC and other HHS components.

## NARA IS BIASED

47.    NARA has flipped its position to accommodate the CDC. On May 5, 2020, NARA found that another Department of Health and Human Services component engaged in "the issue of premature deletion of emails of departing employees." *See* Letter from Laurence Brewer, Chief Recs. Officer for U.S. Gov't, NARA, to Patricia Bosco, Agency Recs. Officer, Agency for Healthcare Rsch. & Quality (May 5, 2020) (available at https://bit.ly/3Zqi482).

48.    In that unauthorized disposition case, NARA concluded it would "investigate this matter further" with the Department. *Id.*

49.    NARA documents evidence of the destruction of federal records by virtually every executive branch department annually. *See* NARA, *Federal Records Management, Unauthorized Disposition of Federal Records*, https://bit.ly/3xANvUZ.

50.    In one case involving the FBI, former FBI agent Scott Payne intentionally removed official records from the FBI's custody. According to press reports cited

by NARA, "Sitting in the crates [Mr. Payne] brought home when he retired are the field notes and transcripts of every case he's worked." Letter from Lawrence Brewer, Chief Recs. Officer for U.S. Gov't, NARA, to Teresa Fitzgerald, FBI (Feb. 10, 2022) at 1 (available at https://bit.ly/3UhoBme).

51.    NARA did not refer Mr. Payne to the Department of Justice for investigation. Instead, it permitted the FBI to "retriev[e] 99 discs from the former employee's residence, documented that the former employee affirmed that he does not possess any hard copy documents and that the discs are the 'totality of government records and information in his possession.'" Letter from Lawrence Brewer, Chief Recs. Officer for U.S. Gov't, NARA, to Teresa Fitzgerald, FBI (March 30, 2022) at 3 (available at https://bit.ly/3UhoBme).

52.    A former FBI agent who intentionally removed sensitive law enforcement records from a federal agency and held those records for several years is not referred for investigation nor prosecuted.

53.    Yet when it comes to a President who transferred records he believed to be personal records or non-records to his home and held those records for a matter of months, NARA decided, without authority, to refer the former President to the Department of Justice for investigation. The Department of Justice then decided to prosecute the former President. *See* Brief of Amicus Curiae America First Legal Foundation in Support of President Trump's Motion To Dismiss the Indictment Based on The Presidential Records Act, *United States Of America, v. Donald J. Trump, Waltine*

*Nauta, and Carlos De Oliveria* (Case No. 23-80101, S.D. FL) at 1–5, (available at https://bit.ly/3UiWKSN [hereinafter "America First Legal Amicus"].

54.    Unlike the cases of unauthorized disposition, where former employees took records and personally retained them after their employment terminated, President Trump transported records from the White House to his personal residence before the end of his term. *Id*. at 6.

55.    The Federal Records Act, by its text, expressly authorizes "the Attorney General to institute an action for the recovery of missing records." *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288, 302 (D.D.C. 2012).

56.    The Archivist is specifically required by statute to request the Attorney General to recover records removed in an unauthorized manner. 44 U.S.C. § 3106(b).

57.    The Attorney General did not conduct enforcement actions to recover agency records intentionally removed by Scott Payne or numerous others despite his explicit statutory requirement to do so. *See, e.g.*, Letter from Lawrence Brewer, Chief Recs. Officer for U.S. Gov't, NARA, to Teresa Fitzgerald, FBI (Aug. 4, 2021) at 2, (available at https://bit.ly/3UhoK9g) ("a former FBI analyst 'removed and retained' records including materials related to al-Qaeda and Osama bin Laden, and kept them in her home over the course of more than a decade").

58.    The Presidential Records Act contains none of the requirements present in the Federal Records Act concerning NARA's authority to request action by the Attorney General. *See* America First Legal Amicus at 4–5; *see also Judicial Watch v.*

*NARA*, 845 F. Supp. 2d at 298 ("If [judicial review] is available, why is the PRA entirely silent on the subject? What standard of review would apply? Would there not be a high level of deference … How could a challenge to a President's classification decision be litigated without the decision-maker participating as a party to the lawsuit … what is the statute of limitation that applies?").

59.    The substantial evidence is that Joe Biden, individually, and the Biden Administration, more generally, have repeatedly violated federal records laws. *See, e.g.*, *Press Release, America First Legal Demands the National Archives Make Public Biden's Vice Presidential Records, Found at His Various Homes and Affiliated Locations* (Mar. 21, 2023), http://bit.ly/3FW44fl; Steve Nelson, *'Boxes of Documents in Boston' Latest Reveal in Biden Classified Saga*, N.Y. POST (Feb. 10, 2023), http://bit.ly/3TQ3vtr; Victor Nava, *FBI Searched University of Delaware for Classified Biden Documents: Report*, N.Y. POST (Feb. 15, 2023), http://bit.ly/3ZpuLQA.

60.    The Biden Administration has routinely and improperly disposed of federal records throughout the bureaucracy. For instance, the Biden Administration IRS improperly destroyed 64,000 IRS Forms 941—where employers report quarterly withholding for corporate income tax, Social Security, and Medicare. Letter from Lawrence Brewer, Chief Recs. Officer for U.S. Gov't, NARA, to Tracee Taylor, Agency Records Officer, IRS (June 30, 2021), (available at https://bit.ly/3JRgXst).

61.    In another HHS component, Congress uncovered alarming evidence that Dr. David Morens—a top advisor to Dr. Anthony Fauci—intentionally subverted

FOIA to shield discussions related to the origins of COVID-19. *Press Release, Wenstrup Reveals Emails from Whistleblower Alleging Additional Attempts by Fauci Advisor to Subvert Transparency About COVID-19 Origins* (Apr. 11, 2024), https://bit.ly/4cZg7ri.

## UNLAWFUL RECORDS REMOVAL OR DESTRUCTION

62.    The CDC's removal or deletion of employee emails is the unlawful removal or destruction of federal records. 44 U.S.C. § 3106; 36 C.F.R. § 1230 *et seq*.

63.    Defendant Becerra has not initiated action through the Attorney General for the recovery of the missing emails.

64.    Defendant Shogan has not requested the Attorney General to initiate an action for recovery or other redress nor notified Congress of such a request.

65.    The Defendants' initiation of an enforcement action and enlistment of "the significant law enforcement authority of the Attorney General," *Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201, 205–09 (D.D.C. 2018), is substantially likely to redress AFL's injuries by leading to the recovery of at least some of the records at issue.

66.    The removed or deleted emails are likely to be recoverable from the servers on which they have been stored. For instance, GRS 6.1 notes a distinction between "an email archive vs. the live system." Exhibit E at 2.

67.    Congress enacted the Federal Records Act to protect the legal rights of persons directly affected by the agency's activities. *See* 44 U.S.C. § 3101.

## CLAIMS FOR RELIEF

### COUNT I
### Administrative Procedure Act; 5 U.S.C. § 706
### Failure to Refer Matter to Attorney General

68.     The Plaintiff incorporates the allegations above by reference as if fully set forth herein.

69.     When the head of a federal agency "knows or has reason to believe" that federal records "have been unlawfully removed" from agency custody, he has a duty to "initiate action through the Attorney General for the recovery of [the] records." 44 U.S.C. § 3106(a). If the agency head fails to do so "within a reasonable period of time," the Archivist must do the same. *Id.* § 3106(b); *see id.* § 2905(a).

70.     "If the agency head and the Archivist ignore the statute, private litigants may sue under the Administrative Procedure Act to enforce it." *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 232–33 (D.D.C. 2018) (citing *Armstrong*, 924 F.2d at 295–96).

71.     Defendant Becerra knows or has reason to believe that HHS records have been unlawfully removed, yet he had not initiated any action through the Attorney General for the recovery of those records.

72.     A reasonable time has elapsed since Defendant Becerra failed to refer the matter to the Attorney General, and Defendant Shogan also knows or has reason to believe that HHS records have been unlawfully removed. Yet Defendant Shogan also has not initiated any action through the Attorney General for the recovery of those records or notified Congress of such action.

73.    By violating 44 U.S.C. § 3106, the Defendants are (a) acting without ob-servance of procedure required by law; and (b) acting in a manner that is arbitrary, capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A), (B) and (D).

74.    The Defendants' violations have injured AFL by depriving AFL of access to federal records responsive to its FOIA requests and increasing the likelihood that AFL will be unable to obtain responsive federal records.

75.    These injuries to AFL are likely to continue as long as the Defendants fail to adhere to § 3106.

76.    Each of these failures to comply with the FRA's requirements consti-tutes final agency action under the APA. 5 U.S.C. § 706.

COUNT II
Administrative Procedure Act; 5 U.S.C. § 706
Adequacy of HHS's Recordkeeping System

77.    The Plaintiff incorporates the allegations above by reference as if fully set forth herein.

78.    Despite purportedly following GRS 6.1, the CDC, an HHS component, has been removing records in former employees' email accounts within three years and in as little as thirty days.

79.    Defendant Becerra, HHS, and CDC have failed to maintain a record-keeping program that provides consistent, effective controls over the maintenance of electronic message records.

80.    HHS's and CDC's recordkeeping policies for electronic records in the form of former employees' emails are inadequate, arbitrary, capricious, and otherwise not in accordance with the Federal Records Act.

81.    The Defendants' violations have injured AFL by depriving AFL of access to federal records responsive to its FOIA requests and increasing the likelihood that AFL will be unable to obtain responsive federal records.

82.    These injuries to AFL are likely to continue as long as Defendant Becerra and HHS continue to use an inadequate recordkeeping program for CDC emails.

83.    HHS's failure to comply with the Federal Records Act via its implementation of an inadequate recordkeeping policy constitutes final agency action under the APA. 5 U.S.C. § 706.

<u>DEMAND FOR RELIEF</u>

WHEREFORE, the Plaintiff respectfully prays that this Court enter judgment in their favor and against the Defendants, and:

    a.    Declare the Defendants in violation of the APA and the Federal Records Act;

    b.    Declare the Defendants in violation of their nondiscretionary duties under the Federal Records Act to initiate an enforcement action through the Attorney General;

    c.    Declare that Defendants Becerra and HHS have maintained an inadequate recordkeeping system under the Federal Records Act;

    d.   Issue a preliminary and permanent injunction requiring Defendants to immediately initiate an enforcement action through the Attorney General to recover, retrieve, restore, salvage, or reconstruct federal records unlawfully removed or deleted and to seek any other redress authorized by law;

    e.   Issue a preliminary and permanent injunction requiring Defendants Becerra and HHS to maintain an adequate recordkeeping system under the Federal Records Act;

    f.   Award AFL costs and reasonable attorneys' fees in this action; and

    g.   Grant such other and further relief the Court deems just, proper, or equitable.

Dated: April 17, 2024

                            Respectfully submitted,

*/s/ Michael Ding*                   */s/ Christopher E. Mills*
Reed D. Rubinstein            Christopher E. Mills
D.C. Bar No. 4700153         D.C. Bar No. 1021558
Daniel Z. Epstein              SPERO LAW LLC
D.C. Bar No. 1009132         557 East Bay Street #22251
Michael Ding                   Charleston, SC 29413
D.C. Bar No. 1027252         (843) 606-0640
AMERICA FIRST LEGAL FOUNDATION  cmills@spero.law
611 Pennsylvania Avenue SE #231
Washington, D.C. 20003
(202) 964-3721
Reed.Rubinstein@aflegal.org
Daniel.Epstein@aflegal.org
Michael.Ding@aflegal.org

*Counsel for the Plaintiff*
*America First Legal Foundation*