**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

America First Legal Foundation,

*Plaintiff*,

v.

Xavier Becerra, United States Department of Health and Human Services, Colleen Shogan, and National Archives and Records Administration,

*Defendants*.

Civil Action No. 1:24-cv-1092

**PLAINTIFF'S REPLY IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION**

Reed D. Rubinstein
D.C. Bar No. 4700153
Daniel Z. Epstein
D.C. Bar No. 1009132
Michael Ding
D.C. Bar No. 1027252
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
Reed.Rubinstein@aflegal.org
Daniel.Epstein@aflegal.org
Michael.Ding@aflegal.org

Christopher E. Mills
D.C. Bar No. 1021558
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

## TABLE OF CONTENTS

Introduction ..... 1
Argument ..... 4
I. The Plaintiff is likely to succeed. ..... 4
A. The Plaintiff's first claim is likely to succeed. ..... 4
1. The evidence shows unlawful removal of records. ..... 5
2. Section 3106(a)'s referral duty includes removal and destruction. ..... 6
3. Section 3106(b)'s referral duty includes removal and destruction. ..... 12
4. The removal or destruction here was unlawful. ..... 14
B. The Plaintiff's second claim is likely to succeed. ..... 15
II. The Plaintiff faces irreparable harm. ..... 19
III. The balance of equities and public interest support preliminary relief. ..... 23
Conclusion ..... 24

## INTRODUCTION

The Defendants' opposition fails to answer the simple question at the core of this case: if the CDC retains former employees' email records for longer than 30 days after separation, why did the CDC tell AFL that it could not search for responsive FOIA records from such employees after 30 days? Contradicting its binding agreement with NARA and departing from General Records Schedule 6.1, the CDC now claims that non-Capstone employees decide for themselves whether emails are FRA "records" and then maintain those records separately. But that is flatly inconsistent with the CDC's representation to AFL that it could not search for responsive records from two of three relevant employees because it had been more than 30 days since those employees departed the agency. It is also inconsistent with NARA's own understanding in its April 2023 response to the CDC letter, when it said the CDC "must follow" GRS 6.1. Ding Decl. Ex. E at 1. Indeed, the CDC's agreement with NARA says that the CDC (like other HHS components) would follow GRS 6.1 for *all* employees:[1]

| | |
|---|---|
| Name of Agency to Which this Form Applies: | Centers for Disease Control and Prevention |
| Record Group Number: | 0442 |

*** Please spell out full agency name. Please do not use acronyms.*

Is this form superseding a previous submission? ☐ YES ☒ NO

If yes, provide previous tracking number assigned by NARA:

GRS 6.1 item(s) proposed for use: ☒ ALL ☐ ITEM 010 ☐ ITEM 011 ☐ ITEM 012

---

[1] Verification for Implementing GRS 6.1, https://perma.cc/CA3N-MC4U (approved by NARA Mar. 28, 2017); *compare* General Records Schedule 6.1, Transmittal No. 33, at 22 (Jan. 2023) (available at https://bit.ly/3FZHgvz) (showing that Items 11 and 12 are for non-Capstone employees).

Federal law requires the CDC to abide by this authorized schedule. 36 C.F.R. § 1226.10. And even on the CDC's apparently unauthorized recordkeeping policy announced in litigation, its prior 30-day explanation makes no sense: a search should have been available of those former employees' records. Though the government does its best to obfuscate these points, they underscore AFL's likelihood of success. *See, e.g.*, Declaration of Laurence Brewer ¶ 15 (stating that "CDC's Capstone form has an incorrect box checked with respect to its implementation for the email of non-Capstone employees," without providing a copy of that form or explaining whether it has been corrected in another binding agreement).

All that brings us to the two legal claims before the Court, both of which are likely to succeed. First, as the D.C. Circuit has repeatedly held, private litigants may bring a claim to require referral to the Attorney General under 44 U.S.C. § 3106 for an unlawful removal or destruction of records. The Plaintiff's evidence shows an unlawful *removal* of records: the CDC has said that after 30 (or 90) days, access to email records is transferred to Microsoft, then allowed to be removed entirely. The evidence also shows an unlawful *destruction* of records—even on the government's litigating account, there should have been records to search after 30 days. Section 3106(a) is best read to impose a referral obligation on the agency head for this destruction; this reading is most consistent with the statutory text, context, history, and purpose. At a minimum, § 3106(b) imposes a referral obligation on the Archivist for this unlawful destruction.

The Plaintiff's second claim is also likely to succeed. Contrary to the government's mislabeling, this claim does not focus on a particular agency action, but on the adequacy of the CDC's recordkeeping guidelines. The patent *in*adequacy of those guidelines is demonstrated by the CDC's FOIA responses to AFL, which show that the agency apparently lacks any access to former employees' electronic message records just 30 days after separation—contradicting both its agreed-to policy *and* its policy presented in litigation here. Whatever the CDC's policy is, it does not fulfill the agency's statutory obligation to "make and preserve records containing adequate and proper documentation." 44 U.S.C. § 3101. The Plaintiff is likely to succeed.

The other factors also favor relief. The CDC's policy of removing the emails of employees who separate from employment within as little as 30 days will lead to the immediate and ongoing loss of public records—irreparably harming both AFL and the public at large. The government does not claim that following GRS 6.1 while this litigation proceeds would impose any hardship on the CDC. Nor would referring the matter to the Attorney General harm the Defendants in any way. Thus, all factors support preliminary relief to preserve important federal records during the pendency of this lawsuit.[2]

[2] In its discussion of the legal standard, the government is wrong to suggest a different standard based on a purported "mandatory injunction." Opp. 9. The D.C. Circuit "has rejected any distinction between a mandatory and prohibitory injunction." *League of Women Voters v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016); *see Singh v. Berger*, 56 F.4th 88, 96–97 (D.C. Cir. 2022). In any event, the requested injunction would preserve emails that already exist, maintaining the status quo.

## ARGUMENT

All factors support a preliminary injunction. The Plaintiff has a strong likelihood of success on the merits, for the CDC is not following the GRS schedule it bound itself to follow. The CDC's actual policy is thus both unlawful and inadequate, given that it evidently results in no records from electronic messages at all 30 days after a lower-level employee's separation. This unlawful removal—from the CDC's to Microsoft's control—then destruction obligates referrals to the Attorney General under § 3106 by both the HHS Secretary and the Archivist. And whatever the CDC's policy is, it is inadequate to ensure access to important federal records.

Without preliminary relief, the Plaintiff is likely to suffer irreparable harm in the form of permanent loss of access to responsive federal records for its many outstanding FOIA requests. The public will suffer the same loss, while the Defendants are not harmed in any significant way by complying with GRS 6.1 and enabling the Attorney General to start an investigation while this litigation proceeds. The Court should grant the application.

### I. The Plaintiff is likely to succeed.

#### A. The Plaintiff's first claim is likely to succeed.

The government concedes that "[t]he FRA does impose duties on agency heads and the Archivist to make a referral to the Attorney General in certain circumstances" but insists that "those duties apply 'only to removed records,' not to alleged destruction or deletion of records." Opp. 13. And, according to the government, "Plaintiff alleges only the deletion—and not removal—of records." Opp. 14. Each element of the government's argument is wrong. First, the Plaintiff alleges the

unlawful *removal* of records. Second, § 3106(a) also imposes a referral obligation on the HHS Secretary for a *destruction* of records. Third, at a minimum, § 3106(b) imposes a referral obligation on the Archivist for a destruction of records.

**1. The evidence shows unlawful removal of records.**

The government acknowledges that "[t]hroughout its Complaint, Plaintiff refers to the 'removal or deletion of employee emails.'" Opp. 14. The government asserts that these terms have a "distinct meaning" and that "removal" does not "encompass[]" deletion. *Id.* The government, however, does not articulate these "distinct meaning[s]," much less show that a given action could never involve both removal and deletion. And regardless, given the explanations the government's declarants provide, the Plaintiff is likely to show an unlawful removal.

Under NARA's regulations, "[r]emoval means," *inter alia*, "transferring" or "otherwise allowing a record to leave the custody of a Federal agency." 36 C.F.R. § 1230.3(b). According to the CDC's own declarant, email records from former employees are transferred to non-Capstone employee supervisors for 90 days, and then they are allowed to leave the custody of the CDC and be transferred to Microsoft for up to another 90 days. Declaration of Mary Wilson ¶ 15; *see* Opp. 19. That is, on NARA's own definition, "removal."

The government invokes the canon against superfluous usage, arguing that "[i]f 'removal' encompassed 'deletion,' there would have been no need to separately list 'deletion' in the statutory provision." Opp. 14. But here, there was removal *and then* deletion. Reading the statutory list of terms also clarifies that the superfluity canon does not apply. Many of the terms overlap: "unlawful removal, defacing,

alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency." 44 U.S.C. § 3106(a). "[T]here is no way to give independent force to every word in [the] statute." *Mercy Hosp., Inc. v. Burwell*, 206 F. Supp. 3d 93, 98 (D.D.C. 2016). There is no way to define "alteration" so it does not include at least some "defacing." Likewise, there is no way to define "erasure" so that it does not include at least some "deletion." Hence, the concluding catch-all of "other destruction," whose use shows that Congress sought to sweep broadly to encompass every unlawful change in protected records. The D.C. Circuit has repeatedly "recognize[d] that Congress may use overlapping language to sweep up technicalities that more precise provisions may leave behind." *Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1069 (D.C. Cir. 2018). "[R]edundancies that are subtle or pitted against otherwise plain meanings" are "feeble interpretative clues." *Id.* at 1068; *see Mercy*, 206 F. Supp. 3d at 98 (collecting authorities); *see United States v. Cua*, 657 F. Supp. 3d 106, 117 (D.D.C. 2023) ("Overlapping terms are used to ensure the breadth of coverage, not to restrict the meaning of a term merely because it follows another term having a different and at times narrower meaning."). Thus, the Plaintiff is likely to show an unlawful *removal*.

#### 2. Section 3106(a)'s referral duty includes removal and destruction.

Next, the government errs in reading § 3106(a) to require referral by the agency head *only* for unlawful "removal" and *not* for unlawful "defacing, alteration, corruption, deletion, erasure, or other destruction of records." 44 U.S.C. § 3106(a). The government's argument disregards circuit precedent, which has repeatedly held

that "if the agency head and the Archivist do not take the required 'action to prevent the *unlawful destruction or removal of records*, private litigants may sue under the APA to require them to do so.'" *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016) (emphasis added) (quoting *Armstrong v. Bush*, 924 F.2d 282, 296 n.12 (D.C. Cir. 1991)). In *Armstrong*, the D.C. Circuit said so repeatedly. *See* 924 F.2d at 295 ("[I]f the agency head or Archivist does nothing while an agency official *destroys or removes* records in contravention of agency guidelines and directives, private litigants may bring suit . . . ." (emphasis added)); *id.* at 296 ("On the basis of such clear statutory language mandating that the agency head and Archivist seek redress for the unlawful *removal or destruction* of records, we hold that the agency head's and Archivist's enforcement actions are subject to judicial review." (emphasis added)).

These were holdings, as the question in *Armstrong* was whether the FRA required the defendants "to request that the Attorney General initiate an action to prevent [agency] staff from *destroying records*"—specifically, erasing computer records. *Id.* at 295 n.10; *see id.* at 284; *see also Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1280 (D.C. Cir. 1993) ("*Armstrong II*") (explaining the prior *Armstrong* decision as holding that "plaintiffs could seek judicial review of (1) agency guidelines' conformity to the FRA and (2) the agency heads' and Archivist's discharge of their FRA-derived responsibility to take action to prevent destruction or removal of federal records").[3]

[3] One court distinguished *Armstrong* as "forward looking," *Citizens for Resp. & Ethics in Washington v. SEC*, 916 F. Supp. 2d 141, 147 (D.D.C. 2013), but the question of timing is irrelevant to § 3106(a)'s language. The government's reading would exclude

Ignoring this binding precedent, the government again invokes the canon against superfluous usage, emphasizing that § 3106(a) says that the agency head "shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully *removed* from that agency" (emphasis added). But as already explained, the superfluidity canon has no place in § 3106, for all the terms overlap and reinforce. Instead of the canon against superfluous usage, the proper interpretative canon is a "fundamental" one: "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019). Words should not be construed "in a vacuum," and the Court must account for "context," "structure," "history," and "purpose" "to divine the meaning of language." *Id.* And under that canon, § 3106 reflects Congress's intent to sweep broadly.

Section 3106 broadly mandates referral for an enforcement action for record "recovery" or for "other redress" to address "any" of the "unlawful action[s]" identified in § 3106(a). 44 U.S.C. § 3106(b). And a parallel FRA provision, 44 U.S.C. § 2905(a), requires the Archivist (1) to "notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to the Archivist's attention"; (2) to "assist the head of the agency in initiating action through the Attorney General for

---

from a referral duty *any* action related to records destruction. In any event, this case too involves ongoing destruction of CDC records.

*the recovery of records unlawfully removed and for other redress* provided by law"; and (3) if the agency head fails to "initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action," to directly "request the Attorney General to initiate such an action" (emphasis added).

In context, it is clear that § 3106(a)'s reference to "unlawful remov[al]" is a shorthand for the list of preceding terms, which all involve some type of "destruction" of records—per the catch-all final term. That interpretation harmonizes subsection (a) with subsection (b)'s reference to "other redress," as well as with § 2905(a)'s similar reference. *See Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002) ("Statutory provisions *in pari materia* normally are construed together to discern their meaning.").

Any other construction is difficult to rationalize in terms of congressional intent: why would Congress be concerned *only* with "removal" (or "physical removal," as the government here atextually limits the term, Opp. 14), and not with the other types of "destruction" of federal records? As the D.C. Circuit has said, "the entire enforcement scheme assumes that the agency head (or Archivist) will actually refer cases to the Attorney General—as the statute requires—and we said that if he does not 'there will be no effective way to prevent the destruction or removal of records.'" *Kerry*, 844 F.3d at 956 (quoting *Armstrong*, 924 F.2d at 295).

Consider this hypothetical: on the last day of an administration, every agency tries to delete all its electronic records. *Cf. Citizens for Resp. & Ethics in Washington v. Exec. Off. of President*, No. CIV.A.07-1577, 2009 WL 102146, at *1 (D.D.C. Jan. 15,

2009). On the government's reading of § 3106, that action triggers no duty to notify the Attorney General: nothing has been "physically removed." It is hard to conceive that such a bizarre reading of § 3106 is consistent with legislative intent.

Though recourse to legislative history is unnecessary because the statute is clear in context, that history only underscores the absurdity of the government's understanding. In amending the statute in 1984, "Congress recognized that the FRA administrative enforcement mechanism needed to be strengthened '[b]ecause of the frequency of incidents of removal *or destruction* of records in recent years.'" *Armstrong*, 924 F.2d at 294 (quoting H.R. Conf. Rep. No. 98-1124 at 28) (emphasis added). The conference report—relied on by the D.C. Circuit in *Armstrong*—said that under the law, "if the agency head does not seek to initiate action within a reasonable time after notification of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action." H.R. Conf. Rep. 98-1124 at 27 (emphasis added). The report defines "any such unlawful action" as "any actual impending or threatened removal, defacing, alteration, or destruction of records in that agency's custody." *Id.*

This interpretation reflects NARA's own. NARA has summarized § 3106 as providing that "if the head of the agency does not initiate action for recovery or other redress for the records within a reasonable time of being notified of *the unlawful destruction or removal*, the Archivist has the responsibility to request that the Attorney General initiate action." National Archives and Records Administration, NARA 1463, *Unauthorized Destruction or Removal of Records in the Legal or Physical*

*Custody of Federal Agencies* § 1463.4(a)(2) (2016), https://tinyurl.com/zhbakcju (emphasis added); *see also* 36 C.F.R. § 1230.16 (invoking § 3106 in setting forth NARA's actions for "damage, alienation, or unauthorized destruction").

Thus, § 3106(a) *and* (b) encompass any unlawful destruction, including both removal and deletion. The government's efforts to avoid this conclusion are unavailing. First, the government suggests that "removal" is only "physical removal." Opp. 14 (cleaned up). But nothing in the statute supports that limitation, which only raises more questions than it answers. In the government's view, can the removal of electronic records—nearly all records now—*never* be unlawful? How could the government justify that absurd reading of federal law?

Next, the government alludes to purported "peculiar practical and constitutional difficulties" with giving the statute its meaning in context. *Id.* (cleaned up). According to the government, "[i]n instances of deletion of records, the defendant would likely be a federal agency itself," and constitutional "tension" might arise from "intra-Executive disputes." *Id.* (cleaned up). But the government does not—and cannot—say that referrals for "removal" could never involve identical circumstances. *See Armstrong*, 924 F.2d at 292 (noting congressional concerns about "the anomalous situation whereby an agency head has a duty to initiate action to recover records which he himself has removed" that precipitated the current § 3106 language (cleaned up)). Presumably, *most* "physical removals" are accomplished by some government entity. Nor, contra the government, is the "Plaintiff seek[ing] here" a federal court resolution of a dispute between two agencies, Opp. 15, but a referral to

the Attorney General. So no order by this Court would entail any constitutional difficulty at all. Finally, judicial cases between agencies exercising Article II executive power are hardly unknown. *E.g.*, *Dep't of Treasury, I.R.S. v. Fed. Lab. Rels. Auth.*, 494 U.S. 922 (1990).[4]

In the end, the government relies only on a few cases from other courts in this district. *See* Opp. 13, 15 n.5. But those courts provided no other rationales for this atextual limitation on § 3106(a)'s coverage—and found this to be "a close question." *CREW*, 916 F. Supp. 2d at 146. For the reasons explained, the Plaintiff is likely to succeed in its statutory interpretation of § 3106(a)—an interpretation that NARA seems to share, at least outside of court.

**3. Section 3106(b)'s referral duty includes removal and destruction.**

In all events, "section 3106(b) imposes a referral obligation duty on the Archivist as to all forms of record destruction listed in section 3106(a), not just removal." *Am. C.L. Union Found. of Fla. v. U.S. Immigrs. & Customs Enf't*, No. 1:22-CV-01129, 2023 WL 6461053, at *8 (D.D.C. Aug. 31, 2023) ("*ACLU*"). As Judge Nichols explained, "section 3106(b) starts with the premise that the agency did not initiate an action 'for such recovery *or other redress*.'" *Id.* "At a minimum, 'recovery' in section 3106(b) appears to correspond with 'removal,'" "while 'other redress' appears to correspond to the other types of prohibited actions listed in section 3106(a)." *Id.* "Interpreting the enforcement duty of the Archivist to be coextensive

[4] On top of all that, federal regulations already mediate the types of Department of Justice "conflicts" the government trots out. *See, e.g.*, 28 C.F.R. § 50.15.

with that of the agency would render the 'or other redress' language surplusage," contrary to the government's own canon here. *Id.*; *see* Opp. 14. What's more, "NARA's referral duties under section 3106(b) are triggered when the agency does not initiate an action 'after being notified of any such unlawful action described in subsection (a),'" and subsection (a) "refers to seven kinds of unlawful action—'unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction'—not just 'removal.'" *ACLU*, 2023 WL 6461053, at *8.

The government's footnote response (Opp. 15 n.5) says nothing on this latter point. All it says on the former point is that one court (without addressing Judge Nichols's decision) found the point "unpersuasive," reasoning that § 2905(a)'s reference to "other redress" includes only other redress *for removal*. Opp. 16 n.5; *see Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, No. 22-CV-3350, 2024 WL 1178472, at *11 (D.D.C. Mar. 19, 2024). But that reading would strangely deprive the Archivist of authority to deal with the broad sweep of other unlawful records dispositions, and the recent *CREW* decision did not explain why it considered its reading more "natural[]." *Id.* Nor did it address § 3106(b), where "[i]t would be anomalous at best for Congress to have written 'any such unlawful action described in subsection (a)' if it meant just 'removal' (a word that appears several times in the statute)." *ACLU*, 2023 WL 6461053, at *8; *accord Mary Ferrell Found.*,

*Inc. v. Biden*, No. 22-CV-06176-RS, 2023 WL 4551066, at *9 (N.D. Cal. July 14, 2023).[5]

**4. The removal or destruction here was unlawful.**

In passing and without citation to any decision, the government says that § 3106 does not apply at all because it is limited to "unlawful" actions, and NARA already "found that CDC's policies were lawful." Opp. 16; *see* Opp. 1 ("NARA's review . . . necessarily negates Plaintiff's argument that it is likely to succeed"). That a defendant found its own actions to be lawful does not mean they were lawful. Adopting the government's self-serving theory would eviscerate circuit precedent allowing private plaintiffs to bring suit to compel referral under § 3106, for the government would rarely say that its actions had been unlawful.

The Plaintiff is likely to succeed in showing an unlawful removal or destruction. As noted (and explained more below), NARA approved the CDC's use of GRS 6.1 for *all* employees, and by law, "[t]he application of approved schedules is mandatory." 36 C.F.R. § 1226.10. And even on the government's new explanation of some alternative schedule that the CDC uses (without apparent approval and thus unlawfully), the CDC's stated failure to preserve *any* email records 30 days after lower-level employee separation is unlawful. Last, as also explained below, removal and destruction of documents under the CDC's recordkeeping guidelines are unlawful

[5] The government does not dispute that a "reasonable period of time" has elapsed for the agency head to refer the matter, so the Archivist has a statutory obligation to refer to the Attorney General. 44 U.S.C. § 3106(b).

because those guidelines do not ensure "adequate and proper documentation" of federal records. 44 U.S.C. § 3101.

NARA itself recognized the apparent unlawfulness of the CDC's actions by opening an unauthorized disposition case and requesting a report from the CDC. Ding Decl. Ex. E at 1–2. Under the agency regulation cited in that request, NARA only takes such action "[u]pon receiving . . . credible information that [federal] records are at risk of actual, impending, or threatened damage, alienation, or unauthorized destruction." 36 C.F.R. § 1230.16(b); *compare* 44 U.S.C. § 3106 (requiring referral for "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records"). And NARA's "findings" do nothing to alleviate the above evidence of unlawfulness.

Thus, the Plaintiff is likely to succeed on its first claim.

### B. The Plaintiff's second claim is likely to succeed.

The Plaintiff is also likely to prevail on its second claim for an inadequate recordkeeping system. As the government appears to concede, the "APA provide[s] a private right of action" to challenge an "agency's failure to employ adequate recordkeeping guidelines and directives." *Citizens for Resp. & Ethics in Washington v. Pruitt*, 319 F. Supp. 3d 252, 257 (D.D.C. 2018). Courts may "review whether an agency has complied with § 3102, which mandates that the head of each agency establish and maintain a records-management program that is consistent with the Archivist's promulgated regulations." *Id.* at 258 (citing *Armstrong*, 924 F.2d at 293). And contrary to the government's suggestion, the Plaintiff is squarely challenging the adequacy of the CDC's recordkeeping guidelines and directives. Even after dozens of

pages of briefing and declarations, those guidelines and directives remain as inscrutable as ever—underscoring their inadequacy.[6]

NARA's April 7, 2023 letter said, "all HHS components must follow the recordkeeping requirements in General Records Schedule (GRS) 6.1." Ding Decl. Ex. E at 1. The government does not appear to dispute that (1) the CDC is an HHS component or (2) the CDC does not in fact follow GRS 6.1 for non-Capstone employees. The government's declarants carefully exclude *why* the CDC does not follow GRS 6.1 for those employees. The NARA declarant strongly suggests that the CDC in fact committed to following GRS 6.1 for those employees. That declarant says that after CDC's initial response to NARA's investigation, NARA had "further questions . . . about the use of GRS 6.1 to manage emails." Brewer Decl. ¶ 15. The declarant declines to provide either CDC's initial response or NARA's follow-up, and both appear to be non-public. It seems very likely, however, that NARA's follow-up was prompted because the CDC previously said it would follow GRS 6.1 as to non-Capstone employee emails.

Presumably, that is the meaning of the declarant's mysterious and unelaborated testimony that "CDC's Capstone form has an incorrect box checked with respect to its implementation for the email of non-Capstone employees." *Id.* Indeed, that form (not offered by the government) shows that the very declarants in this case agreed that the CDC would use "GRS 6.1" for "ALL" employees. *See supra* p. 1.

[6] That inscrutability, by the way, explains why the Plaintiff did not (and could not) "further discuss" "CDC's recordkeeping guidelines" earlier (Opp. 11)—no one, not even NARA, seems to know what those guidelines are.

The government's declarant claims, however, that "[t]he narrative of the form . . . accurately reflects the different approaches in place for Capstone and non-Capstone email accounts." Brewer Decl. ¶ 15. Assuming that the form just cited is the one discussed by Brewer, that explanation appears inaccurate. The "implementation scope" textbox merely explains what "component[s]" of the agency the form applies to, as well as—"if an agency did not check 'all'"—"how other email is to be managed." Verification, *supra* note 1. But the CDC *did* check "all." In any event, the textbox does *not*, contra the declarant, state any "different approach[]." It simply says:

> CDC is a component of the Department of Health and Human Services. CDC is maintaining the emails of the CDC Director and all agency executives. The emails will be transferred to the National Archives fifteen years after the end of the employee tenure.

*Id.* That neither suggests a "different approach[]" from GRS 6.1 for non-Capstone employees emails nor (per the form's requirement if CDC had not checked "all") sets out "how other email is to be managed."

"As the Supreme Court has said, 'the Government should turn square corners in dealing with the people.'" *Nat'l Parks Conservation Ass'n v. United States Dep't of the Interior*, No. CV 20-3706, 2024 WL 1344450, at *10 (D.D.C. Mar. 29, 2024) (cleaned up). If the CDC employed some recordkeeping apart from what it publicly agreed to, its practice is unlawful and inadequate. *See* 36 C.F.R. § 1220.32 (requiring that agencies maintain "usable records" "for the length of their authorized retention period"). As the Plaintiff said in its application, and the government notably does not

rebut, "there is no evidence that NARA has approved an alternative policy." Doc. 6-1 at 15 ("Memo.").[7]

Of course, as the government repeats, the Plaintiff's second claim does not focus on the CDC's compliance with its own obligations—that issue is supposed to be part of the first claim "for the agency head or Archivist to request that the Attorney General initiate an enforcement action." Opp. 10 (citing *Armstrong*, 924 F.2d at 294). But to the extent that the government seeks to neuter *Armstrong* and the FRA by limiting § 3106's enforcement actions to referrals only for removal, *see supra* Part I.A, then the FRA does not in fact "contain[] a prescribed method of action" for cases involving other agency destruction of records, Opp. 10, and this claim *could* focus on the CDC's compliance with its own guidelines. The government cannot have its cake and eat it too. *See* Opp. 13 ("the FRA's enforcement duty does not apply to the *deletion* of records").

Regardless, the government's post-hoc excuses only highlight the question of the ongoing adequacy of the CDC's recordkeeping guidelines. The CDC seems to be suggesting that it maintains at least some records from lower-level former employees' emails, albeit without identifying any such record. If that's true, however, then why did the CDC tell AFL that it would not even bother to *search* for responsive email

[7] The government's blasé suggestion that "CDC chose not to follow GRS 6.1 for non-Capstone employees" is highly dubious. Opp. 12. Instead, all evidence suggests that CDC said it would follow GRS 6.1 for non-Capstone employees, did otherwise (which is why NARA was confused and needed follow-up communications), and now is pretending it made a mistake—without apparently rectifying that mistake. This course of conduct is arbitrary, capricious, and contrary to law.

records from former employees who had been separated from service for at least 30 days? *See* Ding Decl. Ex. C at 1. That explanation makes no sense if the CDC's present position is correct. Plus, the government's own declarant says the retention period of *all* emails of former employees is 90 to 180 days. Wilson Decl. ¶ 15. If the CDC's FOIA analysts are incapable of correctly understanding the guidelines and identifying records from former employees—which is the necessary implication of the government's litigating argument—then the CDC's recordkeeping guidelines and directives are obviously inadequate. The issue is not, contra the government, "the lack of responsive records" (Opp. 11), but the views of the CDC's own personnel that after 30 days there are never any email records at all. The agency has failed its statutory obligation to "make and preserve records containing adequate and proper documentation." 44 U.S.C. § 3101. The agency's actions are arbitrary, capricious, and contrary to law, and the Plaintiff is likely to succeed on both claims.

## II. The Plaintiff faces irreparable harm.

The other preliminary injunction factors also support relief. First, the Plaintiff faces irreparable harm. The government does not meaningfully dispute that the CDC's apparent failure to maintain any electronic email records past 30 days of employee separation will continue to deprive AFL and the public at large access to public records, or that such loss of access is an irreparable harm, particularly given the relevance of these documents to ongoing public debates. *See* Memo. 16–17. The government also does not dispute that AFL often files FOIA requests, or that the CDC's apparent policy will infect all its FOIA responses.

Instead, the government misdirects with irrelevant references to administrative exhaustion requirements for the FOIA request that gave rise to the CDC's admission of deleting all records after 30 days. Opp. 18. But a deficient response to that single FOIA request is not the primary irreparable harm here; instead, that harm comes from the CDC's ongoing denial of access to records that should be maintained for public access.

The government's suggestion that *none* of AFL's FOIA requests do or will ever "involve former non-Capstone CDC employees" (Opp. 19) blinks reality, especially since the agency classifies few employees as Capstone employees, *see* Opp. 4 n.2. In AFL's pending FOIA lawsuits against the CDC, AFL requested records from "[a]ll employees at a grade of GS-15 and above and all political employees," Compl. Ex. 1 at 2, *AFL v. CDC*, No. 24-675 (D.D.C. filed Mar. 8, 2024) ("chestfeeding" [sic]), or it did not limit its request by custodians at all, Compl. Ex. 1 at 2–3, *AFL v. CDC*, No. 22-978 (D.D.C. filed Apr. 8, 2022) (social media censorship). Likewise, AFL's FOIA requests are rarely, if ever, limited to Capstone employees.

The government's invocation of a "presumption of regularity" is hard to take seriously, given the stark "evidence to the contrary" (Opp. 19): namely, the CDC's own analysts refusing to fulfill FOIA requests on the sole ground that it was impossible to search for email records of former employees after 30 days from separation. The CDC is *not* "comply[ing] with agency policies," Opp. 19, whether those policies are what the CDC now says in court *or* what it agreed with NARA to use for all employees and must therefore by law use. This is not "speculative" (Opp. 20): the

CDC said it could not search for responsive electronic documents *at all* from former employees after 30 days from separation. Ding Decl. Ex. C at 1; *cf. Aracely v. Nielson*, 319 F. Supp. 3d 110, 153 n.26 (D.D.C. 2018) (finding that defendants were not entitled to a presumption of regularity when plaintiffs had offered "sufficient evidence that ICE officials failed to properly apply [an agency directive] when making parole determinations").

The government claims "delay" because the Plaintiff filed suit "two months after NARA" announced its finding on the unauthorized destruction case. Opp. 20. Nonsense: NARA itself took nearly a year—from April 7, 2023, to February 23, 2024—to investigate this matter. *See* Ding Decl. Exs. E, G. The government's own declarant said NARA asked "further questions" during this year and "CDC provided additional information," though this correspondence is apparently not available to the public (and is not provided by the government's declarants). Brewer Decl. ¶ 15. It took NARA over seven months after it received the CDC's further information to make its determination. And that determination obscured more than it illuminated, as it did not explain the CDC's policy or whether (or why) the CDC departs from the GRS 6.1 schedule it agreed with NARA to use.

In this context, asking NARA to investigate and then taking two months to investigate the claim personally was hardly some dilatory tactic, especially since the statute *requires* that the Archivist have "a reasonable period of time" to make a referral—and the government would have argued that an earlier suit was not ripe. 44 U.S.C. § 3106(b). A proper NARA investigation could have left AFL with no

"occasion to file this lawsuit." *Ramirez v. U.S. Immigr. and Customs Enf't*, 310 F. Supp. 3d 7, 31–32 (D.D.C. 2018) (rejecting a similar delay argument). When that route failed, AFL reasonably sought to determine what HHS's policies were, whether the CDC had departed from those policies, and what any alternative CDC policy was (and how it was authorized). NARA's determination and the CDC's own materials provided no adequate explanation of these issues. Until the government's opposition was filed here, AFL could not ascertain what the CDC's position was.

Even now, the government cannot get its story straight, suggesting that AFL "learn[ed] of CDC's recordkeeping policy" on "March 20, 2023," when it received the email from a FOIA analyst explaining that all electronic mail records from former employees were deleted after 30 days. Opp. 20 (quoting Compl. Ex. A at 4). But the rest of the government's opposition suggests that it is *not* the CDC's policy to remove or destroy all electronic mail records from former records after 30 days—and further suggests that there *should* have been records to at least search. Given that the government, even today, cannot accurately set forth the CDC's email recordkeeping policy, it was hardly an unreasonable delay for AFL to take a little time to try to sort out the CDC's and NARA's contradictions before involving the federal courts. Two short months is nothing like the typical "delay" that impedes preliminary relief. *See, e.g.*, *Bronner v. Duggan*, 249 F. Supp. 3d 27, 44 n.4 (D.D.C. 2017) (two years); *Davis v. D.C. Child & Fam. Servs. Agency*, No. 10-CV-1564, 2014 WL 12802260, at *1 (D.D.C. Aug. 19, 2014) (four years). In all events, as the D.C. Circuit has explained, "a late filing, on its own, is" not "a permissible basis for denying a preliminary

injunction," but "is only significant if the harm has [already] occurred." *Gordon v. Holder*, 632 F.3d 722, 724–25 (D.C. Cir. 2011) (cleaned up). Here, the harm is ongoing to both AFL and the public.

**III. The balance of equities and public interest support preliminary relief.**

The balance of equities and public interest also support relief. Simply requiring the CDC *not* to delete all emails from the lower-level former employees, except in accordance with GRS 6.1, while this litigation is ongoing would remedy part of this irreparable harm. It would ensure appropriate access to public records by both AFL and the public. And, as the government does not appear to dispute, it would impose minimal harm on the CDC. Likewise, asking the Attorney General to initiate an investigation imposes minimal burdens on HHS or NARA.

The government again has no real responses. Granting a preliminary injunction no more "contravene[s] [the FRA's] system of administrative enforcement" (Opp. 21 (cleaned up)) than does the final relief granted in similar FRA cases routinely adjudicated in federal court as permitted by circuit precedent. *See Kerry*, 844 F.3d at 956; *Armstrong*, 924 F.2d at 292 (holding that the FRA "is insufficient . . . to overcome the presumption in favor of judicial review"); *see also Armstrong II*, 1 F.3d at 1288 & n.12 (affirming relief similar to that requested here); *Exec. Off. of President*, 2009 WL 102146, at *2 (issuing an order to preserve emails). And however much the government mischaracterizes this case as involving one "FOIA request"—here, to argue for a "limited public interest"—this case is about the adequacy of the CDC's recordkeeping guidelines writ large and the agency's failure to refer cases involving removal and destruction of records to the Attorney General.

The public has a significant interest in "ensur[ing] an informed citizenry, vital to the function of a democratic society," which is "needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Documents improperly removed or destroyed "will be lost forever to history." *Armstrong*, 924 F.2d at 288. All factors support preliminary relief.

## CONCLUSION

For these reasons, the Court should grant a preliminary injunction enjoining HHS from permitting the CDC's unlawful removal or destruction of lower-level employee emails before the periods prescribed by General Records Schedule 6.1. The Court should also order Defendant Becerra and the Archivist to initiate an action through the Attorney General to recover records already removed by the Centers for Disease Control and Prevention, including those records responsive to AFL's FOIA request.

Respectfully submitted,

*/s/ Michael Ding*
Reed D. Rubinstein
D.C. Bar No. 4700153
Daniel Z. Epstein
D.C. Bar No. 1009132
Michael Ding
D.C. Bar No. 1027252
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721

*/s/ Christopher E. Mills*
Christopher E. Mills
D.C. Bar No. 1021558
SPERO LAW LLC
557 East Bay Street #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

Reed.Rubinstein@aflegal.org
Daniel.Epstein@aflegal.org
Michael.Ding@aflegal.org

MAY 17, 2024